UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MELVIN BANKS, on behalf of himself and all others similarly situated,<br>    Plaintiff,<br><br>    v.<br><br>CENTRAL REFRIGERATED SERVICES INC.,<br>    Defendant. | CAUSE NO.: 2:15-CV-105-JVB-JEM |

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Transfer Venue to the District of Utah [DE 30], filed by Defendant Central Refrigerated Services, Inc., on December 18, 2015. In the instant Motion, Defendant requests that this case be transferred from the Northern District of Indiana to the District of Utah. For the reasons set forth in this Order, the Court grants the Motion.

## BACKGROUND

On March 29, 2013, Plaintiff Melvin Banks, a resident of Lake County, Indiana, submitted an electronic application for employment as a commercial truck driver for Defendant, which Defendant denied a few days later. At that time, Defendant was a Utah Corporation with its principal place of business in West Valley City, Utah.[1]

On March 18, 2015, Plaintiff filed a putative Class Complaint in the Northen District of Indiana seeking a declaratory judgment, statutory and punitive damages, and attorney's fees from Defendant for its alleged violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq*. In his Complaint, Plaintiff alleges that Defendant obtained Plaintiff's consumer reports, including one from reporting company DriverFACTS as part of its applicant screening process, and

---

[1]. Defendant is currently a Delaware Corporation with its principal place of business in West Valley City, Utah.

that the DriverFACTS report contained false and derogatory employment history that Defendant relied on in deciding to deny his application. Plaintiff further claims that Defendant failed to provide him with proper notice that the adverse employment action was based in part on his consumer report and failed to provide him with a summary and copy of his consumer report as required by FCRA.

## ANALYSIS

In the instant Motion, Defendant requests that this case be transferred from the Northern District of Indiana to the District of Utah for the convenience of the parties and potential witnesses and in the interest of justice. Plaintiff argues that the convenience of the parties and witnesses favor the Northern District of Indiana and the interests of justice do not warrant a transfer.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of Section 1404(a) is "to prevent the waste of time, energy and money, and to protect litigants . . . and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). In order to transfer a case: (1) venue must be proper in the transferor court; (2) venue must be proper in the transferee court; and (3) the transfer must serve the convenience of the parties and witnesses and must be in the interests of justice. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). The decision to transfer an action is within the sound discretion of the trial court, and the analysis is made on a case-by-case, fact-intensive inquiry; the statute does not indicate the relative weight to be accorded each factor. *Id.* at 219, 220 n. 3. Because neither party disputes that venue is proper in both the Northern District of Indiana and District of Utah, the Court finds that the first two requirements for transfer of venue under Section 1404(a) are met.

For the analysis of the convenience of the parties and the witnesses, the Court considers the following private interests: "(1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease and access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience of the parties of litigating in the respective forums." *Schumacher v. Principal Life Ins. Co.*, 665 F. Supp. 2d 970, 977 (N.D. Ind. 2009). Although specifically set forth in Section 1404(a), "these factors are best viewed as placeholders for a broader set of considerations, the contours of which turn upon the particular facts of each case." *Travel Supreme, Inc. v. NVER Enters., Inc.*, No. 3:07-CV-194-PPS, 2007 WL 2962641, at *8 (N.D. Ind. Oct. 5, 2007) (quoting *Coffey*, 796 F.2d at 219 n.3). Defendant has the burden of proving that the District of Utah is "clearly more convenient" than the Northern District of Indiana. *Coffey*, 796 F.2d at 219-20.

In analyzing whether the interests of justice are in favor of transfer, the Court considers the public interests, which relate to the efficient functioning of the courts. *Id.* at 219, 220-21. "For this element, courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (citations omitted). The Court will address each of these factors in turn.

**A.     Private Factors: Convenience of the Parties and Witnesses**

1.     Plaintiff's Initial Choice of Forum and Situs of Material Events

"[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed," *In re National Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)), and generally a plaintiff's chosen

3

forum is entitled to substantial deference, particularly where the chosen forum is the plaintiff's home forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). However, in class action suits, such as this case, a plaintiff's choice of forum is entitled to less deference because any member of the "class who subsequently chooses to appear might be faced with similar inconveniences, depending on where the action proceeds." *Morris v. Am. BioscienIce, Inc.*, No. 03 C 7525, 2004 WL 2496496, at *2 (N.D. Ill. Nov. 3, 2004) (quoting *Roots P'ship v. Lands' End, Inc.*, No. 90 C 1310, 1990 WL 186776, at *3 (N.D. Ill. Nov. 14, 1990); *Blake Constr. Co. v. Int'l Harvester Co.*, 521 F. Supp. 1268, 1271–72 (N.D. Ill. 1981)); *see also Andrade v. Chase Home Fin., LLC*, No. 04 C 8229, 2005 WL 3436400, at *5 (N.D. Ill. Dec. 12, 2005) (finding that because "there [was] no basis to conclude that other putative class members would find it convenient for the action to proceed in the Northern District of Illinois," the plaintiff's choice of forum is not afforded significant weight).

In this case, although Plaintiff filed his Complaint in his home forum, he has filed suit on behalf of a putative nationwide class, which, according to the Complaint, exceeds 1,000 members. Aside from himself, Plaintiff has not identified a single class member. As a result, the Court cannot conclude that any other putative class member would find it more convenient for the action to proceed in the Northern District of Indiana. Accordingly, Plaintiff's choice of forum is not accorded significant weight.

Courts also "accord considerable weight to the situs of material events." *Banks v. Stevens Transp. Inc.*, No. 2:15-CV-117-TLS-PRC. Generally, courts have found the situs of FCRA disputes as the place where "the defendant conducted its business." *Id*; *see, e.g.*, *Klingensmith v. Paradise Shops, Inc.*, Civil Action No. 07-322, 2007 WL 2071677, at *2-3 (W.D. Pa. July 17, 2007) (noting that the situs of an FCRA putative class action suit focuses on the defendant's conduct); *Barela v.*

4

*Experian Info. Solutions, Inc.*, No. 04 C 5144, 2005 WL 770629, at *4 (N.D. Ill. Apr. 4, 2005) (noting that a determination of the relevant events and alleged harms in an FCRA case points to the defendant's place of business as the appropriate venue); *see also Ayling v. Travelers Prop. Cas. Corp.*, No. 99-3243, 1999 WL 994403, at *5 (E.D. Pa. Oct. 28, 1999) (finding that when a cause of action "arises from strategic policy decisions of a defendant corporation, the defendant's headquarters can be considered the place where events giving rise to the claim occurred.").

Plaintiff argues that the Northern District of Indiana is the situs of the operative facts of this case because he applied for the position as commercial truck driver with Defendant from his home in Lake County, Indiana, and it was in Indiana where he should have received notice and a copy of his consumer report under FRCA. Defendant argues that the situs of material events is the District of Utah because Plaintiff's employment application was processed and denied there and it was in the District of Utah where the alleged FRCA violations – Defendant's ordering and review of Plaintiff's consumer report and alleged decision to provide insufficient notice and copies of it – took place. In support of its argument, Defendant has provided the sworn declaration of Vickie Bird, Defendant's Human Resource Manager since 1999, as an exhibit. Ms. Bird states that in early 2013, when Plaintiff applied for the commercial truck driver position, all employee recruitment, applications, and consumer reports were obtained and processed by Defendant at its headquarters in West Valley City, Utah. Ms. Bird further represents that all hiring decisions at that time were made at Defendant's West Valley City, Utah, location.

The material events and alleged harms under the FRCA in this case favor the District of Utah. That Plaintiff was in Indiana when he failed to receive the proper notice or copies is not controlling. *See Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. 2009) (holding that

a plaintiff's allegation of deceptive trade practices must focus on the decisions of the defendants' employees to market and sell the allegedly defective product, rather than focusing on the purchases by plaintiffs, and therefore the situs of material events was the defendants' place of business). Defendant has provided evidence that the decisions related to denying Plaintiff's employment application and allegedly failing to comply with FRCA occurred in its West Valley City, Utah, location. In cases, such as the instant case, where "the events *giving rise* to the cause of action took place outside" a plaintiff's choice of forum, a court's analysis of the material events "cuts clearly and substantially" against the plaintiff's choice of forum. *Barela*, 2005 WL 770629, at *4 (quoting *Commercial Union Ins. Co. v. Auto Europe*, *L.L.C.*, No. 01 C 6961, 2002 WL 47026, at *2 (N.D. Ill. Jan.10, 2002)) (emphasis added).

    2.    <u>Relative Ease and Access to Sources of Proof and the Convenience of the Witnesses</u>

Next, the Court considers the two factors of relative ease and access to the sources of proof and the convenience of the witnesses. Defendant argues that all the relevant documents and potential witnesses are located in the District of Utah. Plaintiff argues that modern technology has rendered this factor minimally important in transfer analysis and even if the majority of relevant documents are located in the District of Utah, the parties' ability to access relevant sources of proof remotely does not weigh in favor of transfer. Although "the location of documents and similar sources of proof has become" less of an issue "in this day and age," the relative ease and accesses to sources of proof is a factor the Court must consider. *Milwaukee Elec. Tool Corp. v. Black & Decker (N.A.) Inc.*, 392 F.Supp.2d 1062, 1064 (W.D. Wis.2005). In this case, Ms. Bird's affidavit shows that Defendant requested Plaintiff's consumer report, processed Plaintiff's applicant, and made the final decision to deny his employment application from its West Valley City, Utah, location. To the extent

6

that there are records related to his employment application, Ms. Bird's affidavit shows that those records are likely found in the District of Utah. Conversely, Plaintiff has not identified any relevant documents or records in the Northern District of Indiana. Accordingly, the Court finds that the relative ease and access to sources of proof favor transfer.

As to the relative ease of the witnesses, this "factor . . . is often considered the most important of the transfer factors." *Robinson Steel Co. v. Caterpillar Inc.*, No. 2:10 CV 438, 2011 WL 923415, at *6 (N.D. Ind. Mar. 14, 2011). Ms. Bird's affidavit shows that nearly all of the potential witnesses work for Defendant in the District of Utah. While the Court recognizes that the convenience of employee witnesses is typically granted limited weight, *see*, *e.g.*, *Illumina, Inc. v. Affymetrix, Inc.*, No. 09-CV-277, 2009 WL 3062786, at *3 (W.D. Wis. Sept. 21, 2009), Plaintiff has not identified any witness – aside from himself – who resides in the Northern District of Indiana. Since the vast majority of potential witnesses are located in the District of Utah, the Court finds that witness convenience slightly favors transfer.

3. <u>Convenience of the Parties</u>

The Court next considers the convenience of the parties. "This factor involves the consideration of the parties' respective residences and their abilities to bear the expense of trial in a particular forum." *Coll. Craft Cos., Ltd. v. Perry*, 889 F. Supp. 1052, 1056 (N.D. Ill. 1995) (quoting *Heller Fin., Inc. v. Riverdale Auto Parts, Inc.*, 713 F. Supp. 1125, 1131 (N.D. Ill. 1989)).

Although the Northern District of Indiana is more convenient for Plaintiff, the Court cannot conclude that it is more convenient for any other member of the class. Conversely, the District of Utah is a more convenient forum for Defendant. Accordingly, this factor favors transfer.

**B.      Public Factors**

The Court now turns to the "interest of justice" analysis, which focuses on the efficient administration of the judicial system rather than on the private considerations of the litigants. *Coll. Craft*, 889 F. Supp. at 1056 (citing *Coffey*, 796 F.2d at 220-21; *Espino v. Top Draw Freight Sys., Inc.*, 713 F. Supp. 1243, 1245 (N.D. Ill. 1989)). For this analysis, courts look at the relative docket congestion and speed to trial, the court's familiarity with the relevant law, the respective desirability of resolving controversies in each locale, and the relationship of each community to the controversy. *Research Automation*, 626 F.3d at 978; *see also Coll. Craft*, 889 F. Supp. at 1056 (taking into account considerations including trial speed, trying related cases, and having a judge who is familiar with the applicable law).

       1.      Docket Congestion and Speed to Trial

The parties agree that cases proceeded to trial faster in the District of Utah than the District of Indiana in 2015. However, Plaintiff argues that from 2010 through 2014, cases proceeded to trial faster in the Northern District of Indiana. Defendant argues that in addition to cases proceeding faster in the District of Utah, judges in that district have a lighter case load. Even accepting Plaintiff's argument that cases proceeded to trial faster in the Northern District of Indiana between 2010 and 2014, the most recent 2015 report shows that cases proceeded to trial a full seven months faster in the District of Utah. Coupled with the lighter judicial case load in the District of Utah, a fact that Plaintiff does not challenge, this factor favors transfer.

       2.      The Court's Familiarity with the Relevant Law

Plaintiff's Class Complaint alleges violations of FRCA, a federal statute. Therefore, both the District of Utah and the Northern District of Indiana are equally familiar with the applicable law and

competent to adjudicate Plaintiff's claims. *See Simonian v. Pfizer Inc.*, No. 10 C 1193, 2011 WL 2110005, at *2 (N.D. Ill. 2002) (holding that when a case arises under federal law, both forums are equally familiar with the law). Accordingly, this factor is neutral with respect to transfer.

### 3. Desirability of Resolving Controversies in Each Locale

The parties agree that there is no greater need for Plaintiff's putative class action to be resolved in the Northern District of Indiana rather than in another forum. *See Jaramillo*, 664 F. Supp. 2d at 917 (reasoning that when "the putative class is national in scope, there is no compelling community interest that would be preserved by the selection of one venue over another."). Accordingly, this factor is neutral with respect to transfer.

### 4. Relationship of the Community to the Action.

Plaintiff argues that neither forum has a particular local interest over his Class Complaint. Defendant argues that the District of Utah has a strong interest in resolving Plaintiff's claim as all the members of the putative class had their applications denied and suffered alleged FRCA violations in that district. However, because Plaintiff alleges that he is a member of a putative national class, "there is no compelling community interest" for either district. *Id.* Accordingly, this factor is neutral with respect to transfer.

### 5. Defendant's Delay

Plaintiff argues as a general matter that the instant Motion should be denied because Defendant's "dilatory" failure to timely move for transfer undermines the efficient disposition of his claim. Defendant counters that although it waited nine months before filing the instant Motion, its delay was justified. Specifically, Defendant argues that it did not immediately move for transfer because it first filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).

Defendant represents that it was forced to subsequently withdraw that motion because the Seventh Circuit Court of Appeals overturned the case it relied upon in support of dismissal. Defendant further argues that it did not become aware of the Northern District of Indiana's limited nexus to the case until after it answered Plaintiff's Class Compliant and the exchange of initial disclosures showed that almost all of the relevant evidence was located in the District of Utah.

In support of his argument, Plaintiff relies on *Circuit Check, Inc., v. QXC, Inc.,* No. 12-C-1211, 2013 WL 6153234, at *3 (E.D. Wis. Nov. 20, 2013). In *Circuit Check*, the court denied the defendant's motion for transfer as untimely because it was "filed nearly ten months after the case was filed and six months after the scheduling order was issued . . . [with] [d]ispostive motions . . . due in less than two months." *Id.* The court also found that there was "no explanation for why the motion to transfer was not brought earlier." *Id.*

Plaintiff's reliance on *Circuit Check* is misguided. In this case, although Defendant waited nine months before filing the instant Motion, it moved for transfer a mere six weeks after the scheduling order was entered. Moreover, there is no imminent dispostive motion deadline in this case; indeed, the dispostive motion deadline has not been set. Furthermore, that Defendant first moved for dismissal is a satisfactory explanation for why transfer was not sought earlier. Accordingly, the Court cannot conclude that the instant Motion is a dilatory tactic or that Plaintiff has suffered prejudice by its timing.

### C.      **Balance of Factors**

Having considered all the private factors, including Plaintiff's choice of forum, the situs of material events, the relative ease and access to sources of proof, and the convenience of the witnesses and the parties, the Court finds that Defendant has carried its burden of demonstrating that

the balance of private factors weigh in favor of transfer to the District of Utah. Furthermore, having considered the public factors, the Court concludes that although most public factors are neutral with respect to transfer, the District of Utah's lower docket congestion and trial speed favor transfer.

Accordingly, given the Court's discretion in determining venue, the balance of private and public factors, the facts presented in Plaintiff's Class Complaint, and the instant Motion, the Court finds that the appropriate course is to grant the Motion and transfer this case to the District of Utah pursuant to 28 U.S.C. §1404(a).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Transfer Venue to the District of Utah [DE 30]. The Clerk of Court is **ORDERED** to transfer this case to the United States District Court for the District of Utah.

SO ORDERED this 29th day of April, 2016.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:   All counsel of record