# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **MELVIN BANKS,** on behalf of himself and all other similarly situated**,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| **vs.** | **Case No.  2:16-CV-356-DAK** |
| **CENTRAL REFRIGERATED SERVICES, INC.,** a Utah corporation**,** | **Judge Dale A. Kimball** |
| **Defendant.** | |

This matter is before the court on Plaintiff Melvin Banks's Amended Motion for Class Certification and on Defendant Central Refrigerated Services, Inc.'s, Motion to Dismiss for Lack of Subject Matter Jurisdiction and Central's Motion for Summary Judgment. A hearing on all three motions was held on March 28, 2017. At the hearing, Plaintiff was represented by Matthew Dooley, Stephen Bosak, and Ronald Ady. Defendant was represented by Joseph Kroeger and Mark Morris. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to the matter. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

On March 29, 2013, Plaintiff Melvin Banks applied online for a commercial truck driver position with Defendant Central Refrigerated Services, Inc. ("Central"). In evaluating Mr. Banks's application, Central requested a report about Mr. Banks from HireRight on March 29, 2013, and from DriverFACTS on April 2, 2013. Based at least in part on Mr. Banks's purported

work history contained in his DriverFACTS report, Central refused to further consider Mr. Banks's application for employment.

By April 3, 2013, Mr. Banks learned that he was denied employment because of his DriverFACTS report through an email exchange with Ms. Joan Ivie, a Central recruiter. However, Mr. Banks claims that Central never informed him that he had a right to request a free copy of his DriverFACTS report or that he may dispute the accuracy and completeness of any information in the report with the reporting agency. Mr. Banks further claims that Central even refused to provide Mr. Banks with his DriverFACTS report after he requested it, although Mr. Banks did eventually procure a copy of his DriverFACTS report.

Approximately one month after learning that his denial was a result of information in his DriverFACTS report, Mr. Banks filed a formal dispute and request for correction with DriverFACTS. DriverFACTS considered Mr. Banks's dispute but eventually rejected it, and Mr. Banks's DriverFACTS report remained the same.

On March 18, 2015, Mr. Banks filed this action in the United States District Court for the Northern District of Indiana on behalf of himself and all others similarly situated against Central for violations of the Fair Credit Reporting Act ("FCRA"). On April 29, 2016, the Indiana court granted Central's motion to transfer the venue to the United States District Court for the District of Utah. On November 23, 2016, Mr. Banks filed an Amended Motion to Certify Class. On that same day, Central filed a Motion to Dismiss for Lack of Jurisdiction. On January 18, 2017, Central filed a Motion for Summary Judgment. All of the motions have been fully briefed.

**DISCUSSION**

The court will first address Central's Motion to Dismiss because it questions the courts subject matter jurisdiction. The court will then address Mr. Banks's Amended Motion for Class Certification and Central's Motion for Summary Judgment.

**MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Central moves this court under Federal Rule of Civil Procedure 12(b)(1) to dismiss this action for lack of subject matter jurisdiction because, according to Central, Mr. Banks has not shown that he has standing. The court will address Central's arguments below.

**Standard of Review**

Central's motion to dismiss under Rule 12(b)(1) challenges Plaintiff's purported compliance with the court's limited subject matter jurisdiction. "The [standing to sue] doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Standing is "the threshold question in every federal case" because, if the plaintiff lacks standing, the federal court lacks jurisdiction. *Warth v. Sedlin*, 422 U.S. 490, 498 (1975). "[T]he 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision," and the plaintiff bears the burden of establishing these elements. *Spokeo*, 136 S. Ct. at 1547. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (internal quotation marks and citation omitted). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* (quoting Black's Law Dictionary 479 (9th ed. 2009)).

**Discussion**

In *Spokeo*, the Supreme Court reaffirmed that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549. A plaintiff cannot, "for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 1549. Specifically as it relates to this case, "[a] violation of one of the FCRA's procedural requirements may result in no harm." *Id.* at 1550 ("For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information may be entirely accurate."). Although a bare procedural violation, divorced from concrete harm, may not be sufficient to satisfy Article III's injury-in-fact requirement, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," without the plaintiff needing to "allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549 (citing cases recognizing that a "failure" or "inability to obtain information" "is a sufficient injury in fact to satisfy Article III").

When applying the principles in *Spokeo*, one of the most difficult questions to answer is when a violation of a statute that is procedural in nature rises to the level of an injury in fact in the absence of additional harm. The difficulty arises in trying to draw the line identified in *Spokeo* between a "bare procedural violation," which may not be sufficient to satisfy the injury-in-fact requirement, and the "violation of a procedural right granted by statute," which can be sufficient to constitute an injury in fact. The key distinction between the two categories appears to be whether or not the statute creates a right. *See Warth v. Seldin*, 422 U.S. 490, 514 (1975) ("Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of the statute."). If a statute creates a substantive right, then a violation of

that statutory right cannot be considered merely procedural. *See Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990, 995 n.2 (11th Cir. 2016) (determining that plaintiff "has not alleged a procedural violation" because "Congress provided [plaintiff] with a substantive right to receive certain disclosures and [plaintiff] has alleged that [defendant] violated that substantive right").

Therefore, "[t]he first task . . . is to determine from the statutory text the nature of the substantive protections that Congress intended to create in enacting those sections of the FCRA." *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 631 (E.D. Va. 2016). In this case, Mr. Banks is alleging that Central violated Section 1681b(b)(3)(B) of the FCRA. That provision of the FCRA provides that, in the case of a consumer who is applying for "a position over which the Secretary of Transportation has the power to establish qualifications and maximum hours of service" and who has only interacted with the potential employer "in connection with that employment application . . . by mail, telephone, computer, or other similar means," the potential employer "must provide to the consumer to whom the [consumer] report relates . . . within 3 business days of taking [an adverse action on the employment application based in whole or in part on the report], an oral, written or electronic notification." 15 U.S.C. § 1681b(b)(3)(B). The notification must inform the consumer that the adverse action was taken based on the report, must provide contact information for the consumer reporting agency that furnished the report, must inform the consumer that the consumer reporting agency cannot provide reasons why the adverse action was taken, and must inform the consumer that he or she may request a free copy of the report and dispute the accuracy or completeness of information in the report. 15 U.S.C. § 1681b(b)(3)(B)(i). If the consumer requests a free copy of the report from the potential employer, "then, within 3 business days of receiving the consumer's request, together with proper identification, the

[potential employer] must send or provide to the consumer a copy of a report and a copy of the consumer's rights." 15 U.S.C. § 1681b(b)(3)(B)(ii).

The court concludes that, by enacting 15 U.S.C. § 1681b(b)(3)(B), Congress created at least two substantive rights on behalf of applicable consumers who suffered an adverse employment action based in whole or in part on a consumer report: a right to information and a right to correct inaccurate information. *See Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 633 (E.D. Va. 2016) ("Congress emphasized that 'the consumer has a right to know when he is being turned down for credit, insurance, or employment because of adverse information in a credit report and to correct erroneous information in his credit file.'" (quoting S. Rep. No. 517, 91st Cong., 1st Sess. 2)); *see also Demmings v. KKW Trucking, Inc.*, Case No. 3:14-CV-494-SI, 2017 WL 1170856, at *9 (D. Or. Mar. 29, 2017) ("KKW assumes that § 1681b(b)(3)(B) has only one purpose: to allow prospective employees to correct inaccurate information in their consumer reports. This interpretation reads too much into *Spokeo's* dicta, and too little into the statutory text."). "[I]t is well-settled that Congress may create a legally cognizable right to information, the deprivation of which will constitute a concrete injury." *Thomas*, 193 F. Supp. 3d at 635; *see also Federal Election Com'n v. Akins*, 524 U.S. 11, 21 (1998) (""The 'injury in fact' that [plaintiffs] have suffered consists in their inability to obtain information . . . that . . . the statute requires that [defendants] make public."); *Manuel v. Wells Fargo Bank, Nat. Ass'n*, 123 F. Supp. 3d 810, 818 (E.D. Va. 2015) ("It is well-established that a deprivation of information is sufficient to satisfy the injury-in-fact requirement."). Several courts have recognized that multiple sections of the FCRA provide consumers with a right to information. *See, e.g.*, *Syed v. M-I, LLC*, No. 14-17186, 2017 W: 1050586, at *4 (9th Cir. Mar. 20, 2017) ("The disclosure requirement at issue, 15 U.S.C. § 1681b(b)(2)(A)(i), creates a right to information by requiring prospective employers

to inform job applicants that they intend to procure their consumer reports as part of the employment application process."); *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 637 (E.D. Va. 2016) ("Section 1681b(b)(3), like § 1681b(b)(2)(A), provides the consumer with a legally cognizable right to specific information."); *Manuel*, 123 F. Supp. 3d at 818 ("Under the FCRA, . . . consumers have the right to specific information at specific times.").

Central's primary argument that Mr. Banks lacks standing to sue is that Mr. Banks suffered no concrete harm from Central's alleged procedural violations. In his sworn testimony, Mr. Banks does admit that he did not suffer economic, physical, or emotional harm from Central's alleged violation of the FCRA. The facts support that admission because, when Mr. Banks eventually did learn that he was rejected due to information in his DriverFACTS report, he disputed that information with DriverFACTS. DriverFACTS rejected Mr. Banks's dispute and left the same information in the report. Therefore, as Central repeatedly notes in its briefing on this issue, Mr. Banks's employment situation with Central would have been exactly the same even if Central had strictly complied with the FCRA's notice requirements.

However, Mr. Banks is not arguing that he suffered an injury in fact based on his employment situation but is instead arguing that he suffered an informational harm by not being provided the required notices under the FCRA and by not receiving the copy of his DriverFACTS report that he requested from Central. Indeed, in this case, Central failed to inform Mr. Banks of his right to obtain a copy of and challenge his DriverFACTS report after Central took an adverse employment action against Mr. Banks allegedly based, at least in part, on information in that report. Completely failing to provide information required to be provided by the FCRA is distinguishable from having immaterial inaccuracies in the information, *see, e.g.*, *Spokeo*, 136 S. Ct. at 1550 (providing "an incorrect zip code" as an example of an inaccuracy

that does not "cause harm or present any material risk of harm), failing to timely provide information, *see, e.g.*, *Dutta v. State Farm Mut. Auto. Ins. Co.*, No. 3:14-CV-04292-CRB, 2016 WL 6524390, at *3 (N.D. Cal. Nov. 3, 2016) (dismissing an FCRA claim where the potential employer failed to provide timely information to the applicant), or providing information in the wrong format, *see, e.g.*, *Fisher c. Enter. Holdings, Inc.*, No. 4:15CV00372 AGF, 2016 WL 4665899, at *4 (E.D. Mo. Sept. 7, 2016) (concluding that plaintiff failed to plead concrete harm under *Spokeo* where only the format and conspicuousness of defendant's disclosures failed to comply with FCRA). Although some of these examples may qualify as "bare procedural violations," the court concludes that the failure to provide Mr. Banks with information that he is statutorily entitled to is not a "bare procedural violation" but is a violation of Mr. Banks's substantive rights under the FCRA. Because Mr. Banks was deprived of the substance of his rights under the FCRA, the court also concludes that Mr. Banks has alleged sufficient violations to constitute an injury in fact.

In its Motion to Dismiss, Central does not argue that Mr. Banks failed to meet either of the other two elements required for standing. Therefore, the court concludes that Central's Motion to Dismiss for Lack of Subject Matter Jurisdiction should be denied.

## MOTION FOR CLASS CERTIFICATION

Mr. Banks moves this court to certify the proposed class. The court will analyze both Mr. Banks's arguments in favor of certification and Central's arguments opposing certification below.

### Standard of Review

A party seeking to certify a class must satisfy the four threshold requirements of Rule 23(a), as well as one of the subsections of Rule 23(b). *See Shook v. El Paso Cnty.*, 386 F.3d 963,

971 (10th Cir. 2004). Rule 23(a) provides that a case is appropriate for certification as a class action if: "(1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy]." Fed. R. Civ. P. 23(a). As to Rule 23(b), Mr. Banks is seeking class certification under Rule 23(b)(3), which authorizes certification where the court finds "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The party seeking class certification "must be prepared to prove . . . *in fact*" that all of the requirements of Rule 23 are met, and the court must conduct a "rigorous analysis" of these prerequisites before ruling on class certification. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011); *see also Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1217 (10th Cir. 2013). "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Shook*, 368 F.3d at 971. Therefore, the court must accept the plaintiff's substantive allegations as true. *Id.* at 968. The court should resolve any doubts in favor of certification. *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968) ("[A]ny error, if there is to be one, should be committed in favor of allowing the class action.").

**Ascertainability**

Although the United States Court of Appeals for the Tenth Circuit has not explicitly discussed the requirement that the members of a class be ascertainable, several circuit and

district courts recognize that the members of a class must be ascertainable under Federal Rule of Civil Procedure 23. *See, e.g.*, *Rhodes v. Olson Associates, P.C.*, 83 F. Supp. 3d 1096, 1112-13 (D. Colo. 2015) ("Although the identity of individual class members need not be ascertained before class certification, the members of the class must be ascertainable."). The circuit courts are split on the proper standard for determining whether a class is ascertainable. *See In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2016 WL 5371856 (D. Kan. Sept. 26, 2016). The Seventh Circuit uses a "'weak' version of ascertainability" that only requires a class to "be defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). But the Third Circuit requires a class to be "ascertained in an economical and 'administratively feasible' manner" and "class members [to] be identified 'without extensive and individualized fact-finding or "mini-trials."'" *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) (citations omitted). Although at least one district court in the Tenth Circuit has applied the Seventh Circuit's weak version of ascertainability, *see In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2016 WL 5371856 (D. Kan. Sept. 26, 2016), the majority of district courts in the Tenth Circuit appear to apply the Third Circuit's more stringent standard for ascertainability, *see, e.g.*, *Abraham v. WPX Prod. Prods., LLC*, 317 F.R.D. 169, 254 (D.N.M. 2016).

In this case, after the benefit of class-related discovery, Mr. Banks proposes the following class:

> All natural persons throughout the United States who applied remotely for a truck driver position with Central, were the subject of a consumer report created by HireRight or DriverFACTS and procured by Central for employment purposes from March 18, 2010, through February 1, 2014, and against whom Central took adverse action based in whole or in part upon the consumer report without providing verbal, electronic, or written notice within 3 days of taking adverse action that the consumer may request a free copy of the report and may dispute with the consumer reporting agency the accuracy and completeness of the report.

Mr. Banks argues that the members of the putative class can be easily identified by cross-referencing Central's own employment records, which include records of those rejected for employment, with records provided by HireRight and DriverFACTS, which detail the applicants that were the subject of reports procured by Central. Specifically, Mr. Banks argues that the class can be identified by referencing recruiter notes that mention a report and specific codes in the coding system used by Central on its employment records, such as the "REJECTED: WORK HISTORY, DAC, ETC." ("REWH") code, and by cross-checking those employees with HireRight and DriverFACTS records to ensure that a putative member was in fact the subject of a report. Mr. Banks argues that this method should be sufficient to identify members of the class because, by Central's own admission, Central would not go to the cost of obtaining the reports until after verifying that the applicant otherwise met Central's hiring criteria. Mr. Banks used this methodology to compile an initial Class List that included over 1,300 putative class members.

Central argues that the class definition and method for identifying class members proposed by Mr. Banks do not meet the ascertainability requirements under either the Seventh Circuit or the Third Circuit standard. Specifically, Central argues that the proposed class definition is tied to success on the merits because the class is essentially defined as everyone against whom Central committed a violation of the FCRA's adverse action provision. Under the Seventh Circuit's standard, these "so-called 'fail-safe classes' . . . are not properly defined." *Mullins*, 795 F.3d at 660. Central also argues that the proposed method for identifying class members is neither reliable nor administratively feasible without individual factual inquiry. Central argues that the proposed method is unreliable because Central's recordkeeping practices for the relevant period were unsophisticated and because Central's recruiters used codes inconsistently. For example, the REWH code was used for a variety of different disqualifying

information, and some recruiters used a different code to classify a rejection based on a report. When Central tested Mr. Banks's proposed method on a small sample, Central identified several "false positives." Central further argues that identifying the class would require a detailed, file-by-file review of each applicant's recruiting file, which Central argues is inappropriate for a class action. *See Abraham v. WPX Prod. Prods., LLC*, 317 F.R.D. 169, 258 (D.N.M. August 16, 2016) ("[I]dentifying class members is a manageable process that does not require much, if any, individual factual inquiry." (citation omitted)).

In this case, the court does not need to decide whether to apply the Seventh Circuit or the Third Circuit standard because the court concludes that the class proposed by Mr. Banks is ascertainable under either standard. Although it is clear that Central may need to "search its existing records" to identify members of the class, *Rhodes v. Olson Associates, P.C.*, 83 F. Supp. 3d 1096, 1112 (D. Colo. 2015) ("That Defendant may need to search its existing records does not mean, however, that this class is 'unascertainable.'"), the court does not consider a search of existing records to rise to the level of "extensive and individualized fact-finding" or "mini-trials" prohibited under the Third Circuit standard. Reviewing recruiter notes and specific codes on employment records is not overly extensive fact-finding. The court is also convinced that, despite the arguably false positives identified by Central, the method proposed by Mr. Banks is reasonably accurate. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539, 541 (6th Cir. 2012) (agreeing with the district court that the method for identifying class members is "reasonably accurate" and that "100% accuracy" may not be required).

Central also argues that the proposed class definition is not proper because it is a fail-safe class. The purpose of courts not certifying fail-safe classes is to avoid the problem where "the defendant is forced to defend against the class, but if a plaintiff loses, she drops out and can

subject the defendant to another round of litigation." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015). "The key to avoiding this problem is to define the class so that membership does not depend on the liability of the defendant." *Id.* In this case, the problem with redefining the class so that membership does not depend on liability of the defendant is that a redefinition may run into the separate problem of defining the class too broadly. *See Kohen v. Pacific Inv. Management Co., LLC*, 571 F.3d 672, 677 (7th Cir. 2009) ("[A] class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant."); *see also McElhaney v. Eli Lilly & Co.*, 93 F.R.D. 875, 878 (D.S.D. 1982) ("The definition of a class cannot be so broad as to include individuals who are without standing to maintain the action on their own behalf."). In other words, the definition has to be precise enough to show that the members of the class suffered injury and have standing without being so precise that membership depends on liability of the defendant.

Mr. Banks has proposed a class definition that shows that the members of the class suffered injury and have standing, but Central argues that the definition is too precise because membership depends on Central's liability. Although the class definition proposed by Mr. Banks does resemble a fail-safe class is some ways, the court concludes that the proposed class definition does not produce the problem that courts seek to avoid by not certifying fail-safe classes. If Central shows that a plaintiff in this case did receive the notices required by the FCRA, the plaintiff would drop out of the class and could possibly subject Central to another round of litigation. However, the plaintiff would lack standing in the new litigation because the plaintiff would either not have suffered an injury or the injury would not be traceable to Central's conduct. Therefore, the threat of significant, additional litigation is minimal in this case.

Therefore, the court concludes that the proposed class definition and methodology for identifying class members are ascertainable.

**Numerosity**

Numerosity requires that the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The plaintiff is not required to plead or prove the actual size of the class, and the court may rely on "common sense assumptions" in evaluating numerosity. *See Ditty v. Check Rite, Ltd.*, 182 F.R.D. 639, 641 (D. Utah 1998).

As already mentioned, Mr. Banks has identified over 1,300 putative class members that meet the proposed class definition, so the court concludes that Mr. Banks has established the numerosity requirement in this case.

**Commonality**

Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A finding of commonality requires only a single question of law or fact common to the entire class." *Miller v. Basic Research LLC*, 285 F.R.D. 647, 654 (D. Utah 2010). The common issue must be such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *In re Whirlpool*, 722 F.3d 838, 852 (6th Cir. 2013) ("This inquiry focuses on whether a class action will generate common answers that are likely to drive resolution of the lawsuit.").

The court concludes that several common questions of law and fact exist in this case, the determinations of which are central to the validity of Mr. Banks's claims. For example, this case will require resolution of issues such as whether the background reports procured by Central constitute "consumer reports" under the FCRA, whether Central took adverse employment action

against class members without providing adverse action notices, and whether Central's conduct constitutes a willful violation of the FCRA. These common questions are likely to be resolved by referencing Central's standardized conduct. Therefore, the court concludes that at least one question of law or fact exists that is common to the entire class.

**Typicality**

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A named plaintiff's claim is typical if it arises from 'the same event or practice or course of conduct that gives rise to the claims of the other class members and is based on the same legal theory.'" *Ditty v. Check Rite, Ltd.*, 182 F.R.D. 639, 642 (D. Utah 1998) (citation omitted). To meet typicality, a "representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006).

Mr. Banks's claims arise out of Central's alleged practice of failing to provide the information required under the FCRA to job applicants. That alleged practice is the same among all class members. In addition, the claims of all of the class members are based on the same legal theory: that neither Mr. Banks nor the putative class members received the FCRA adverse action notice mandated under 15 U.S.C. § 1681b(b)(3)(B).

Central makes multiple arguments against a finding of typicality. First, Central argues that Mr. Banks is subject to a unique standing defense because he suffered no concrete harm. But, as described above, the court concludes that Mr. Banks did suffer a concrete injury due to the informational harm he suffered by not receiving the required notices.

Central also argues that Mr. Banks's claim is not typical because of the unique statute of limitations framework established by the FCRA. Under the FCRA, individuals who discover an

alleged violation are subject to a two-year statute of limitations period while all other individuals fall under a five-year statute of repose. *See* 15 U.S.C. § 1681p. Central argues that Mr. Banks is the only named class member in this case who admittedly knew about his alleged injury at or near the time the alleged violation occurred, so, according to Central, Mr. Banks's claims should only be considered typical of claims of members of the class who also fall under the two-year statute of limitations. But the "assertion an action is barred by the statute of limitations is an affirmative defense" and the "defendant bears the burden of showing the two-year period, rather than the five-year period, applies." *Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625, 639 (D. Or. 2015). Whether the defenses of the non-class party against the members of the class are typical for all members of the class is irrelevant to determining whether "the claims or defenses of the *representative parties* are typical of the clams or defenses of the class." Fed. R. Civ. P. 23(a)(3) (emphasis added); *see also Grimmelmann. V. Pulte Home Corp.*, Nos. CV-08-1878-PHX-FJM, CV-08-1757-PHX-FJM, 2010 WL 2744943, at *6 (D. Az. July 9, 2010) (clarifying that courts determining typicality look "only to the nature of the claim or defense of the class representative" and concluding that the claims are sufficiently typical where "the injuries plaintiffs claim to have suffered occurred in each case as a result of [defendant's] alleged failure to disclose the same information"). Therefore, the court concludes that, because Central bears the burden of asserting the affirmative defense that the action against some members of the class may be barred by the statute of limitations or the statute of repose, the potential that the affirmative defense may apply differently to different members of the class does not affect Mr. Banks's showing of typicality in this case.

Finally, Central argues that Mr. Banks's claims are not typical of the entire class because Mr. Banks was only rejected based on his DriverFACTS report, but he is seeking to represent

both applicants who were rejected based on a DriverFACTS report and applicants who were rejected based on a HireRight report. The parties do not dispute that Mr. Banks was rejected for employment based on information in his DriverFACTS report. However, the parties also do not dispute that Central requested both a HireRight report and a DriverFACTS report for Mr. Banks, and neither party has provided evidence to the court or argued that the decision to reject Mr. Banks for employment was not also based in whole or in part on the HireRight report. Mr. Banks's claim against Central is that Central took adverse action against him based in whole or in part on a consumer report without providing Mr. Banks with the information required under the FCRA. This is the same claim shared by all class members, and, to the extent that Mr. Banks can show that both the DriverFACTS report and the HireRight report are consumer reports, Mr. Banks would advance both his own interest and the interests of the absent class members.

Therefore, the court concludes that Mr. Banks has demonstrated that his claims against Central are typical of the claims of the proposed class.

**Adequacy**

The adequacy requirement ensures that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002) (citation omitted). Under the vigorous advocacy prong, plaintiffs may be deemed an inadequate representative where they: (1) "lack personal knowledge concerning the type and extent of damages they have suffered"; (2) "lack credibility concerning their liability claims"; (3) "have afforded their attorneys unfettered discretion to

17

conduct the litigation"; or (4) "[have] physical or mental limitations which may preclude [them] from being in a position to act in the best interest of the class." *Robinson v. Gillespie*, 219 F.R.D. 179, 186 (D. Kan. 2003). However, these inquiries into the character and understanding of a plaintiff are not seeking to determine whether the plaintiff is well-versed in the legal theories or arguments relevant to their case but are seeking to ensure that the plaintiff is willing and able to assist his or her counsel in vigorously prosecuting the action on behalf of the class without demonstrating other characteristics that could conflict with or hurt the interests of the class.

Central does not argue that Mr. Banks's counsel is not adequate to vigorously prosecute the action on behalf of the proposed class. Instead, Central argues that Mr. Banks is not an adequate representative because he testified during his deposition that he had never seen the class action complaint, that he did not know what statute he was bringing his claims under or what damages he was seeking, that he never reviewed or verified his own written discovery responses, and that he did not have significant interactions with his counsel. However, Mr. Banks's deposition was not notable for its consistency. During the same deposition, Mr. Banks also testified that he had read the complaint, stays in regular contact with his class counsel, and knows that he represents a class of trucking applicants that were similarly aggrieved.

Regardless of Mr. Banks's understanding of the legal theories or familiarity with the legal documents related to this case, the relevant questions are whether Mr. Banks has any conflicts of interest with other class members and whether he is willing and able to assist his counsel in vigorously prosecuting the action on behalf of the class. *See Ditty v. Check Rite, Ltd.*, 182 F.R.D. 639, 642 (D. Utah 1998) ("Although some courts have inquired into the named plaintiffs' understanding of the lawsuit or their character, that factor is generally given little weight."). Central has not identified, and the court is not aware of, any conflicts of interest that Mr. Banks

may have with the other members of the proposed class. Mr. Banks has also demonstrated his willingness and ability to assist his counsel in this case. Although the court understands the concern with a plaintiff "simply lending his name to a suit controlled entirely by the class attorney," *Robinson v. Gillespie*, 219 F.R.D. 179, 186 (D. Kan. 2003) (citation omitted), the court does not consider the level of participation demonstrated by Mr. Banks in this case to be so minimal as to be considered turning complete control of the case over to his attorney.

Therefore, the court concludes that Mr. Banks has demonstrated that he will fairly and adequately protect the interests of the class.

## Rule 23(b)(3) Prerequisites

In addition to meeting the prerequisites for class actions identified in Federal Rule of Civil Procedure 23(a), a party seeking class certification must also demonstrate that the action is one of the three types of class actions identified in Rule 23(b). In this case, Mr. Banks argues that this action is the type of class action described in Rule 23(b)(3).

Rule 23(b)(3) requires the court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "To meet the predominance requirement, a plaintiff must establish that 'the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In re Med. Waste Services Antitrust Litig.*, No. 2:03-MD-1546-DAK, 2006 WL 538927, at *3 (D. Utah Mar. 3, 2006) (citation omitted). In the Tenth Circuit, courts

perform this analysis by characterizing the issues as common or not and then weighing which issues predominate. *See CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014).

The factors relevant to assessing superiority include "(1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D). "[T]he greater the number of individual issues to be litigated, the more difficult it will be for the court to manage the class action." *Walker v. Bankers Life & Cas. Co.*, No. CIV.A.06 C 6906, 2008 WL 2883614, at *12 (N.D. Ill. July 28, 2008). Consumer claims, especially those where each plaintiff would only be entitled to a small amount of money if successful, are often appropriate claims for class actions. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("That actual loss is small and hard to quantify is why statutes such as the [FCRA] provide for modest damages without proof of injury. Rule 23(b)(3) was designed for situations such as this, in which potential recovery is too slight to support individual suits, but injury is substantial in the aggregate."); *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 395-96 (N.D. Ill. 2006) ("Consumer claims are among the most commonly certified for class treatment.").

To argue that Mr. Banks has not met his burden of proving that common questions predominate over individualized issues, Central points to individual issues that it argues must be determined for each prospective class member, including whether the individuals are subject to the two-year statute of limitations or the five-year statute of repose and whether the individuals had any in-person contact with the prospective employer, which determines which adverse action

requirements in the FCRA apply. *See* 15 U.S.C. § 1681b(b)(3)(C). In terms of in-person contact with the prospective employer, Central argues that applicants would appear in person at Central facilities to apply for a driver position on a near daily basis even though their eventual application was submitted remotely.

Even though Central has identified some issues that may need to be decided for individual class members, the court concludes that common questions still predominate over individualized ones and that a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. Mr. Banks is bringing claims based on Central's alleged systematic failure to provide rejected applicants with the substantive adverse action notices required under the FCRA and is seeking statutory damages arising under similar circumstances for each class member. In order to prove its claims for each member of the entire class, Mr. Banks will need to demonstrate, among other things, that the reports qualify as consumer reports under the FCRA, that Central's conduct was uniform as to the class, and that Central's conduct constitutes a willful violation of the FCRA. Common questions such as these will predominate over any individual issues that may need to be addressed. In addition to common questions predominating, a class action is superior to other methods in this case due to the relatively small statutory damages for each class member and due to the fact that many members of the class may still be unaware of their claims.

Therefore, the court concludes that Mr. Banks has sufficiently demonstrated that his proposed class should be certified as to the claims raised in this case.

## MOTION FOR SUMMARY JUDGMENT

Central moves for summary judgment on all of Mr. Banks's claims under the argument that the FCRA excludes from the definition of a consumer report communications made to an

employer "in connection with an investigation of . . . compliance with Federal, State, or local laws and regulation . . . or any preexisting written policies of the employer." 15 U.S.C. § 1681a(y). Central argues that it obtained the DriverFACTS report at issue in this case to comply with a federally mandated investigation, so the report is excluded from being a consumer report for purposes of the FCRA. *See* 49 C.F.R. § 391.23(a)(2) and (c)(2) (requiring certain federal motor carriers to make "[a]n investigation of the driver's safety performance history with Department of Transportation regulated employers during the preceding three years," which "may consist of personal interviews, telephone interviews, letters, or any other method of investigating that the carrier deems appropriate").

In other words, Central is arguing that, because the investigation was conducted to comply with a Federal regulation, the report falls within the exclusion. But Central's argument is not consistent with the express terms of the statute. The statute refers to communications "made to an employer in connection with an investigation," 15 U.S.C. § 1681a(y)(1)(B), so the statute places the employer in the role of either ordering or conducting an investigation. For purposes of this case, the statute describes the thing being investigated as "compliance with Federal . . . regulations." 15 U.S.C. § 1681a(y)(1)(B)(ii). If the employer is in the role of either ordering or conducting the investigation, then the person or entity being investigated must not be the employer. Instead, the investigation, being ordered or conducted by the employer, must be seeking to discover whether the *employee* is complying with Federal regulations. This is consistent with the title of § 1681a(y), "Exclusion of certain communications for *employee* investigations." 15 U.S.C. § 1681a(y) (emphasis added).

Concluding that § 1681a(y) applies to investigations conducted or ordered by the employer into an employee's compliance with Federal regulations is also consistent with the

legislative history behind § 1681a(y). According to the legislative history, the interpretation of certain provisions of the FCRA had the unintended consequence of discouraging employers from conducting investigations into workplace misconduct by employees. Section 1681a(y) was enacted to remove those unintended consequences. *See* 149 Cong. Rec. E2512-02, 149 Cong. Rec. E2512-02, E2518, 2003 WL 22900844, 20 ("This provision is intended to address the ill effects of certain regulatory guidance issued by the FTC staff in 1999 that had the unintended consequence of deterring employers from using outside firms to investigate alleged employee misconduct, including racial discrimination and sexual harassment claims.").

Therefore, based on the express terms of the statute, the exclusion in § 1681a(y) applies to investigations conducted or ordered by an employer into employee compliance with Federal regulations. Although the distinction between this interpretation of the statute and the interpretation proffered by Central is nuanced, the distinction is important. Central would have the court apply the exclusion in § 1681a(y) to the *employer's* compliance with Federal regulations in ordering or conducting an investigation. However, as discussed above, the statute actually applies to communications related to investigations into an *employee's* compliance with Federal regulations. Although the regulations at issue in this case require Central to perform investigations into the safety performance histories of applicants, Central has not shown that it is conducting the investigations into its employees' compliance with Federal regulations. Therefore, the court concludes that Central has not shown that the exclusion in § 1681a(y) applies to Central's investigations.

Because Central has not made any other arguments in support of its motion for summary judgment, the court also concludes that Central's motion should be denied.

**CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [ECF No. 67] is DENIED, Plaintiff's Amended Motion for Class Certification [ECF No. 65] is GRANTED, and Defendant's Motion for Summary Judgment [ECF No. 78] is DENIED.

DATED this 2d day of May, 2017.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge