Matthew A. Dooley    (admitted *pro hac vice*)
O'Toole, McLaughlin, Dooley &
Pecora Co., LPA
Sheffield Village, Ohio 44054
Telephone: (440) 930-4001
Facsimile: (440) 934-7208

Ronald W. Ady (3694)1,
Ronald Ady, PLLC
8 East Broadway, Suite 725
Salt Lake City, Utah 84111
Telephone: (801) 530-3122
Facsimile: (801) 746-3501

*Attorney for Plaintiff*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| **MELVIN BANKS, on behalf of himself and All Others Similarly Situated**, <br><br> Plaintiff, <br><br> v. <br><br> **CENTRAL REFRIGERATED SERVICES, INC., a Utah Corporation**, <br><br> Defendant. | **PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Case No. 2:16-cv-00356-DAK <br><br> District Judge Dale A. Kimball <br><br> Magistrate Judge Paul M. Warner |

In accordance with Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Melvin Banks ("Banks") respectfully moves the Court for preliminary approval of the class action settlement (the "Settlement") and approval of form and manner of notice. Defendant Central Refrigerated Services, LLC ("Central")[1] does not oppose the relief requested.

---

[1] After the litigation commenced, Defendant reorganized itself from Central Refrigerated Services, Inc. to Central Refrigerated Services, LLC.

## I.     INTRODUCTION AND HISTORY

In March 2015, Banks filed this class action lawsuit alleging violations of the Fair Credit Reporting Act ("FCRA") related to Central's use of consumer reports to assess the qualifications of prospective employees. Following the case's transfer to this district, the Parties engaged in vigorous litigation including broad discovery and extensive motion practice. On May 2, 2017, the Court granted Banks's motion for class certification and denied Central's motion to dismiss and motion for summary judgment. (Doc. 87). The Court certified the following class of individuals:

> All natural persons throughout the United States who: (1) applied remotely for a truck driver position with Central, (2) were the subject of a consumer report created by HireRight or DriverFACTS procured by Central from March 19, 2010 through January 31, 2014, (3) had no face-to-face interaction with Central prior to Central's procurement of the consumer report, and (4) against whom Central took adverse action based in whole or in part upon the consumer report without providing verbal, electronic, or written notice within 3 business days of taking adverse action that the consumer may request a free copy of the report and may dispute with the consumer reporting agency the accuracy and completeness of the report.

Following approval from the Court on July 19, 2017, Class Counsel sent Notice to the Class via regular United States mail on July 31, 2017. (Docs. 88-1; 89). On October 5, 2017, the Parties conducted an in-person mediation before mediator John G. Bickerman resulting in a preliminary class settlement. The terms of this settlement are memorialized in the attached Stipulation of Settlement. (*See* Exhibit 1.)[2] The settlement creates a $1,400,000 common fund to be distributed on a pro rata basis to 1,266 class members. Banks seeks preliminary approval of the class settlement. As more fully explained below, the settlement is fair, reasonable, and adequate and is in the best interests of the class.

## II.    SUMMARY OF THE PROPOSED CLASS ACTION SETTLEMENT

### 1.     Fed. R. Civ. P. 23(b)(3) Certification.

---

[2] All capitalized terms used herein have the meanings defined in this Memorandum or in the Settlement Agreement

The Parties vigorously litigated this matter through contested class certification resulting in the certification of a nationwide class of consumers affected by Central's conduct. (Doc. 87).[3] In order to certify the class, Class Counsel successfully defeated Central's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion for Summary Judgment. (*Id.*) This contested motion practice followed extensive fact discovery that included written interrogatories, thousands of pages of document production, depositions, and third-party discovery. Only after this intensive litigation and successful class certification, the Parties participated in protracted arm's-length negotiation with the assistance of a mediator. The resulting settlement achieves an excellent recovery for the class members.

## 2. **Settlement Payment.**

Under the Agreement, Central will make a one-time settlement payment of $1,400,000.00 (the "Settlement Funds") to be deposited into an account within thirty (30) calendar days of the Court's preliminary approval of the Settlement. (Ex. 1, ¶ 2.2). This amount will be inclusive of attorney's fees and costs, a service award to Banks, payments to class members, and all costs of notice and claims administration of the Settlement. (Ex. 1, ¶ 2.3). Class Counsel may seek approval of fees up to thirty three percent of the Settlement Funds plus expenses as may be awarded by the Court. (Ex. 1, ¶ 7.1). The Parties will retain a Settlement Administrator to handle notice and claims administration. The cost of notice and administration is estimated to be $22,000.00.

There are approximately 1,266 class members.[4] All class members will automatically receive a check in the gross amount of $1,105.00, which exceeds the statutory maximum provided under the FCRA. *See* 15 U.S.C. § 1681n (permitting statutory damages between $100 and $1,000).

---

[3] In addition to certifying the class, the Court also named Matthew A. Dooley of O'Toole, McLaughlin, Dooley & Pecora Co., LPA and Ronald W. Ady of Ronald Ady, PLLC as Class Counsel.

[4] Eight class members timely opted out and will be excluded from the Settlement. (*See* Tedor Declaration, ¶9).

The net amount of the payments is estimated at $690.00 per class member.

    **3.**   **Third-Party Settlement Administrator**

Class Counsel will hire a third-party class action settlement administrator, KCC, LLC (the "Settlement Administrator"), to oversee the administration of the settlement and the notification to class members. (Ex. 1, ¶ 1.27). The Settlement Administrator will be responsible for mailing the approved class action notices and settlement checks to the class members.

    **4.**   **Mailed Notice**

In accordance with Fed. R. Civ. P. 23(C)(2)(B), Class Counsel mailed, via First Class U.S. Mail, the Court-approved Class Notices to all identified class members on July 31, 2017. (*See* Tedor Declaration, ¶6). Before sending the written notice to the class, Class Counsel researched and updated the class members' addresses. Any notices returned with a new address were re-mailed. Any notices returned without a new address were run through a skip tracing search to find a valid address and re-mailed. The Settlement Administrator will use the updated class list from Class Counsel to notify class members of the settlement terms via the form attached as Exhibit A to the Settlement Agreement. The Settlement Administrator will send the appropriate class notice to each class member no later than 60 days after the Court's entry of the Order of Preliminary Approval of Class Action Settlement. (Ex. 1, ¶ 4.2). In addition to the Mail Notice plan, the Settlement Administrator will establish a settlement website containing relevant information such as the Settlement Agreement, the Mail Notice, Preliminary Approval Order, and contact information for the Settlement Administrator. (*Id.*).

    **5.**   **Narrow Release**

The scope of the release to which each class member would be bound was a substantial point of negotiation. The Settlement Agreement would narrowly tailor the release to be provided

by class members so that it is limited to the claims and issues in this case.

Class members, each of whom will receive a cash payment, will release Central and related persons from all claims resulting from, arising out of, or in any way connected to Central obtaining or using a criminal background, motor vehicle history, DAC report, or other consumer report information related to the class members' application for employment. The class has agreed to this release in exchange for the cash payments it will receive under the Settlement Agreement, which are intended to compensate class members for any possible harm that they might have alleged in this case had it proceeded to trial.

### 6. Uncashed or Expired Settlement Checks

Settlement Checks that are returned, undeliverable, or remain uncashed for sixty (60) days from the date upon which they were mailed class members will have no legal or monetary effect. If after the expiration of this sixty-day period more than $150,000.00 remains uncashed, this sum will be redistributed to Class Members who cashed their initial settlement payment in a pro rata amount. (Ex. 1, ¶ 2.3). Thereafter, any remaining uncashed funds will be distributed to approved *cy pres* beneficiaries. (*Id.*) No amount of the Settlement Funds will revert to Central.

## III. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE PRELIMINARILY APPROVED BY THE COURT.

Under Fed. R. Civ. P. 23(e), once a class is certified, the action may not be settled without Court approval. Preliminary approval is the first of two steps required before a class action may be settled. *In re Motor Fuel Tempature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012). If the court grants preliminary approval, it directs notice to the class members and sets a final fairness hearing. *Id.* The standards for preliminary approval are not as stringent as those applied for final approval. A court "will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no

obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Id.* (quotations omitted).

In the Tenth Circuit, the following factors are analyzed in determining whether the settlement is fair, reasonable and adequate: (1) whether the proposed settlement was fairly and honestly negotiated; (2) where serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002). In this case, each set of factors weighs in favor of approving the Settlement.

## 1. <u>The proposed settlement was fairly and honestly negotiated, and counsel believes the settlement is fair and reasonable.</u>

The fairness inquiry ensures that "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion." *See Rhodes v. Olson Assoc., P.C.,* 308 F.R.D. 664, 667 (D. Colo. 2015). Here, the settlement was reached only after the Parties engaged in vigorous litigation that included full fact discovery and contested motion practice. *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (noting that the parties "vigorously advocated their respective positions throughout the pendency of the case.") Moreover, the settlement was the result of arms-length negotiations with the assistance of mediator John G. Bickerman. *See Hainey v. Parrot*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) ("The participation of an independent mediator in the settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

The Parties also agree that the settlement is fair and reasonable. *See Lucas*, 234 F.R.D. at 695 ("Counsels' judgment as to the fairness of the agreement is entitled to considerable weight.")

(quoting *Marcus v. Kan. Dep't of Revenue*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002)). Under the Agreement, the class members are guaranteed a substantial monetary recovery. Class Counsel are experienced FCRA class action practitioners and firmly believe that the settlement is fair and reasonable and in the best interests of the class. Thus, considering the risks associated with litigating this matter, the meaningful arms-length settlement discussions, and an experienced mediator's and the parties' approval, the fairness factors weigh in favor of preliminary approval.

2. **Questions of law and fact remain, placing the ultimate outcome in doubt.**
    **Moreover, the value of the settlement outweighs the possible relief after continued**
    **litigation.**

Central continues to dispute the merits of Banks's and the class's claims. Because the class seeks statutory and punitive damages, Banks must prove that Central willfully violated the FCRA. 15 U.S.C. § 1681n. Thus, the class still faces the burden of proving that Central's misconduct was knowing or reckless at trial. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 60 (2007). There also remains uncertainty regarding the class's damages where the FCRA limits statutory damages from $100 to $1,000 per class member. 15 U.S.C. § 1681n.

While Banks believes strongly in his case, he also appreciates the litigation risk presented by Central's defenses. Given the potential risk and expense associated with continued litigation, the uncertainty of recovery at trial, and the possibility of protracted appeals, the proposed settlement is clearly adequate and warrants approval. *See Rhodes*, 308 F.R.D. at 667 (noting that "the prospect of a trial necessarily involves a risk that the named Plaintiff and class members would obtain a lesser recovery in damages.") Under the Agreement, Class Counsel successfully negotiated a gross per-class-member recovery of $1,105.00, which exceeds the statutory maximum under the FCRA. And the net amount of per-class-member recovery is expected to exceed $689— well above the statutory minimum of $100 that a jury could award even if the class was successful. Accordingly, with the ultimate outcome in doubt, the substantial immediate recovery provided by

the settlement weighs heavily in favor of preliminary approval.

3.  **The proposed class notice is the best notice practicable under the circumstances, and should be approved by the Court.**

Adequate notice is critical to court approval of a class settlement under Rule 23(e). *See generally Rhodes*, 308 F.R.D. at 664. Pursuant to Rule 23(c)(2)(B):

> The notice [for Rule 23(b)(3) classes] must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3).

Further, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement must be accomplished by the "best notice practicable", meaning "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Class Counsel previously achieved individual notice to each class member following the Court's certification of the class. (*See* Tedor Decl., ¶7).

Likewise, the proposed settlement notice, attached as Exhibit A to the Settlement Agreement, will be provided directly to each Class Member by the Settlement Administrator. In addition, the Settlement Administrator will establish a website with relevant information concerning the case and the settlement terms. This notice plan complies with Rule 23 and due process by informing class members of: (1) the nature of the action; (2) the essential terms of the settlement; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process for objection and/or exclusion; (5) information regarding the named plaintiff's request for a service award and reimbursement of attorney's fees and expenses; and (6) how to make inquires. In short, this notice plan ensures that class members' due process rights are amply

protected and should be approved by the Court.

## IV.     CONCLUSION

For the foregoing reasons, Banks respectfully request the Court grant his motion and enter

the Preliminary Approval Order:

(1) preliminarily approving a proposed class settlement,

(2) scheduling a fairness hearing, and

(3) approving the form and manner of notice proposed to be sent to all members of the

Class.

Respectfully submitted,

O'TOOLE, McLAUGHLIN, DOOLEY &
PECORA CO., LPA

/s/ Matthew A. Dooley
Matthew A. Dooley     (0081482)

Ronald W. Ady (3694)
Ronald Ady, PLLC

*Counsel for Plaintiff and the Putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2017, a true and accurate copy of the foregoing was filed electronically. Notice of this filing will be sent to counsel of record by regular U.S. mail and/or operation of the Court's electronic filing system.

/s/ Matthew A. Dooley
Matthew A. Dooley

Ronald W. Ady (3694)
Ronald Ady, PLLC
*Counsel for Melvin Banks and the putative class*