Matthew A. Dooley    (admitted *pro hac vice*)
O'Toole, McLaughlin, Dooley &
Pecora Co., LPA
Sheffield Village, Ohio 44054
Telephone: (440) 930-4001
Facsimile: (440) 934-7208

Ronald W. Ady (3694)
Ronald Ady, PLLC
8 East Broadway, Suite 725
Salt Lake City, Utah 84111
Telephone: (801) 530-3122
Facsimile: (801) 746-3501
*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| **MELVIN BANKS, on behalf of himself and All Others Similarly Situated**, <br><br> Plaintiff, <br><br> v. <br><br> **CENTRAL REFRIGERATED SERVICES, INC., a Utah Corporation**, <br><br> Defendant. | **PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT** <br><br> Case No. 2:16-cv-00356-DAK <br><br> District Judge Dale A. Kimball <br><br> Magistrate Judge Paul M. Warner |

Plaintiff, Melvin Banks ("Banks") and the putative class, respectfully moves the Court in

accordance with Fed. R. Civ. P. 23 for final approval of the class settlement. A memorandum in

support is attached hereto and incorporated herein.

O'TOOLE, McLAUGHLIN, DOOLEY &
PECORA CO., LPA

/s/ Matthew A. Dooley
Matthew A. Dooley    (0081482)

**MEMORANDUM IN SUPPORT**

## I.    OVERVIEW

This class settlement is made on behalf of consumers residing in the United States who applied for positions with Defendant Central Refrigerated Services, Inc. ("Central") and whose consumer reports were obtained by Central to determine employability.[1] Class Counsel moves the Court for an order granting final approval of the $1,400,000 settlement.

After significant pre-suit research and investigation, Plaintiff Melvin Banks filed this action against Central on March 18, 2015 alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a-1681x. (*See* Doc. 1). Specifically, Banks alleged that Central failed to provide notice to job applicants who applied remotely when denying employment based in whole or in part on the results of the reports under 15 U.S.C. § 1681b(b)(3).

After the case's transfer to this Court, the Parties engaged in vigorous litigation including broad discovery and extensive dispositive motion practice. On May 2, 2017, the Court granted Banks's motion for class certification. (Doc. 87).

Following approval from the Court on July 19, 2017, Class Counsel sent Notice to the Class via regular United States mail on July 31, 2017. (Docs. 88-1; 89). On October 5, 2017, the Parties conducted an in-person mediation before mediator John G. Bickerman resulting in a preliminary class settlement. The terms of this settlement were presented to the Court via the Parties' Stipulation of Settlement (Doc. 95-1) ("Stipulation or Settlement" or "Stipulation") and Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (Doc. 95). The Court preliminarily approved the settlement on December 7, 2017 (Doc. 97).

---

[1] All defined terms shall have the same meanings used in the Stipulation of Settlement (Doc. 95-1).

## II.     THE SETTLEMENT TERMS

### A.  The Class

The court certified the following settlement class definition:

All natural persons throughout the United States who: (1) applied remotely for a truck driver position with Central, (2) were the subject of a consumer report created by HireRight or DriverFACTS procured by Central from March 19, 2010 through January 31, 2014, (3) had no face-to-face interaction with Central prior to Central's procurement of the consumer report, and (4) against whom Central took adverse action based in whole or in part upon the consumer report without providing verbal, electronic, or written notice within 3 business days of taking adverse action that the consumer may request a free copy of the report and may dispute with the consumer reporting agency the accuracy and completeness of the report.

(Doc. 87).

### B.  Consideration provided to class members

The provisions of the Stipulation provide for cash disbursements to Class Members, a *cy pres* trust, a service award to Banks, and attorney's fees and costs within the acceptable range for class actions. The salient terms are as follows:

- Central agreed to pay a total of One-Million-Four-Hundred-Thousand Dollars ($1,400,000.00) (the "Settlement Fund"), from which the following payments to Class Members shall be made after an equal pro rata share after payment of costs of notice and administration, a service payment and attorney fees have been deducted.

- Each Class Member is entitled to a gross sum of $1,105.00 from which the Settlement Administrator shall deduct any attorney fees and costs, service payment and cost of Notice and Administration approved by the Court. If the Court approves the fees and costs, the Settling Parties estimate that the net payment to each Class Member will be $693.80.

- Central does not oppose a petition for attorney fees in an amount not to exceed one-third of the Settlement Fund and reimbursed costs;

- Central does not oppose an application by Banks for a service payment up to $15,000.00.

- No portion of the Settlement Fund will revert to Central;

- The cost of notice and administration of the settlement shall be paid from the Settlement

3

Fund[2]; and

- In the event that settlement checks mailed to Class Members returned as undeliverable
  or otherwise not cashed before becoming stale or void exceeds $150,000.00, this
  remaining sum shall be disbursed to the Class Members who cashed the initial check
  in a pro rata amount of the remaining Settlement Fund after deducting the costs incurred
  for the second distribution. If the sum of uncashed checks is less than $150,000.00, the
  parties shall move the Court to disburse the remaining funds in equal amounts to AND
  JUSTICE FOR ALL and the National Consumer Law Center as *cy pres* beneficiaries.

## III.   LAW AND ARGUMENT

### A.   The Final Approval Procedure

Settlement is favored, particularly in class actions and other complex cases where

substantial resources can be conserved by avoiding the time, cost, and rigors of prolonged

litigation. *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014) (quoting

*Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010)); Albert Conte & Herbert Newberg,

*Newberg on Class Actions* § 11.41 (4th ed. 2002) ("By their very nature, because of the uncertainty

of outcome, difficulties of proof, length of litigation, class action suits lend themselves readily to

compromise.") Recognizing that complex litigation can be "notoriously difficult and

unpredictable," in the absence of "fraud or collusion," settlements in complex litigation should not

be disturbed. *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) (quoting

*Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983)).

Under the Federal Rules of Civil Procedure, parties proposing the settlement of the claims

of a certified class must obtain the Court's approval. *See* Fed. R. Civ. P. 23(e)(1)(A). Rule 23(e)

provides in relevant part:

> [t]he court may approve a settlement, voluntary dismissal, or
> compromise that would bind class members only after a hearing and
> on finding that the settlement, voluntary dismissal, of compromise
> is fair, reasonable and adequate.

---

[2] The cost of notice and administration is approximately $20,287.

The three-step process for approval of class action settlements in federal court is described in the *Manual for Complex Litigation* §§ 21.632-635 (4th ed. 2004) ("*Manual*") which provides the following procedure:

    1.      [p]reliminary approval of the proposed settlement at an informal hearing;

    2.      [d]issemination of mailed and/or published notice of the settlement to all affected Class members; and

    3.      [a] "formal fairness hearing", or final approval hearing, at which *class members* may be heard regarding the settlement, and at which presentations concerning the fairness, adequacy, and reasonableness of the settlement is presented.

*See also Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983).

Here, the Court has granted preliminary approval of the proposed settlement, and the Settlement Administrator has completed dissemination of the settlement notices to affected class members. (*See* Declaration of Ryanne Cozzi, attached as Exhibit 1) Therefore, the Court need only determine whether the settlement is fair, reasonable, and adequate. *Manual*, at ¶¶ 21.632-35.

**B.**      **The proposed settlement merits final approval.**

In exercising its discretion, the trial court must approve a settlement if it is fair, reasonable and adequate. *See* Fed. R. Civ. P. 23(e)(2). Courts in the Tenth Circuit examine four factors (the "*Jones* factors") to determine whether final approval is appropriate including: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). The Court already determined that these factors were met in connection with its decision to grant preliminary approval. (Doc. 97). Nothing has changed

to alter the Court's conclusions and the proposed settlement merits final approval.

### C.      The Settlement is fair, reasonable, and adequate as a whole.

#### 1.   *The proposed settlement was fairly negotiated.*

Where "the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate and reasonable." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *Tuten*, 41 F. Supp. 3d at 1007 ("arms-length negotiations between experienced counsel" demonstrate "that the Settlement was fairly and honestly negotiated"). That the parties "have 'vigorously advocated their respective positions throughout the pendency of the case'" likewise indicates that the negotiations "have been fair, honest and at arm's length." *Lucas*, 234 F.R.D. at 693 (quoting *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997)).

The proposed settlement is a product of years of hard-fought litigation culminating in Banks successfully achieving contested class certification and defeating Central's two dispositive motions. Ultimately, the Parties reached a settlement following a full day of arms-length negotiations with an experienced mediator. The advanced stage of the litigation itself evidences that the settlement was fairly negotiated. *See Lucas*, 234 F.R.D. at 693; *Wilkerson*, 171 F.R.D. at 284-85 (recognizing that "voluminous discovery" supports a finding that the proposed settlement was fairly negotiated). The use of an experienced mediator also ensured that the negotiations were fair and honest. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (finding a mediator's involvement "helps to ensure that the proceedings were free of collusion and undue pressure"). Mr. Bickerman is a highly respected mediator whose participation was critical to the resolution of this case. The first *Jones* factor weighs strongly in favor of final approval of the Settlement.

6

### 2.   *Serious questions of law and fact exist.*

The uncertainty of success on the merits weighs in favor of approving settlement. *Lucas*, 234 F.R.D. at 693-94. Here, the ultimate outcome remains in doubt. In the absence of the proposed settlement, the Parties would proceed to trial and Banks would need to prove the merits of his and the Class's claims. The issue of whether Central's conduct constituted a "willful" violation of the FCRA remains a difficult hurdle to any recovery by the Class. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007) (recognizing that a defendant's conduct is willful under the FCRA if it featured "an unjustifiably high risk of harm that is either known or so obvious that it should be known".) These risks and unresolved issues demonstrate that sufficiently serious questions of fact and law exist to warrant final approval of the Settlement.

### 3.   *The value of immediate recovery outweighs the mere possibility of future relief.*

Likewise, the third Jones factor – "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation" – establishes that final approval is appropriate. *See Jones*, 741 F.2d at 324. The proposed settlement offers substantial monetary recovery for each class member near the maximum potential statutory damages recoverable if the case were to go to trial. (*See* Doc. 95, at p. 7-8). Given the uncertainty of trial of the merits, the certain recovery offered by the proposed Settlement weighs in favor of final approval.

### 4. *The Parties agree that the Settlement is fair and reasonable.*

Based on the foregoing, it remains counsel's judgment that the settlement is fair, reasonable and adequate. *See Jones*, 741 F.2d at 324. Plaintiff's Counsel—based on their thorough knowledge of the facts, strengths, and weaknesses of the case—strongly believe that the Settlement is a fair and reasonable compromise. Given their experience and success in prosecuting class actions,

counsel's judgment is entitled to substantial weight. *Lucas*, 234 F.R.D. at 695 (quoting *Marcus v. Kansas Dept. of Revenue*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002) ("'Counsels' judgment as to the fairness of the agreement is entitled to considerable weight'"). Similarly, the settlement has been well received by the Class. To date, there have been no objections to the Settlement, and no Class Members opted out. *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 (D. Colo. 2014) ("The reaction of the class members further supports the conclusion that the Settlement Agreement is fair.") (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)). Thus, there should be no doubt that the proposed settlement is in the Class's best interest and final approval should be granted.

### D.     The notice provided to the Class was more than sufficient.

To satisfy the requirements of Rule 23, the notice to the class need only "fairly apprise" the class members of the nature of the claims at issue and their right to request exclusion. *Tennille v. Western Union Co.*, 785 F.3d 422, 437 (10th Cir. 2015) (citations omitted). Rule 23 requires that notice to the class must be "the best practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2). Here, the notice plan approved by the Court provided notice that meets or exceeds Rule 23 and due process requirements.

On July 31, 2017, Class Counsel mailed the Court-approved Class Notices to all identified class members via First Class U.S. Mail. (*See* Doc. 95-4, Tedor Declaration, at ¶ 6). Following preliminary approval, the settlement administrator mailed notice to the class members advising them of the Settlement. (Doc. 95-3); *see also* Declaration of Ryanne Cozzi, at ¶ 5. As of February 19, 2018:

- Original mailing took place on January 19, 2018 to 1,266 class members;

- 60 of the 1,266 notices were returned as undeliverable;

- Of the total undeliverable notices, 45 were returned with a forwarding address and they were promptly re-mailed to the updated address.

*See* Cozzi Decl., at ¶ 6 (attached as Exhibit 1).

There is no statutory or due process requirement that all class members receive actual notice by mail or other means; rather, "individual notice must be provided to those Class Members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 175-76 (1974). Rule 23(e) gives the Court "virtually complete" discretion as to the manner of service of settlement notice. *See, e.g.*, *Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir. 1981); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-13 (1985) (direct notice satisfies due process).

As a backstop, the Settlement Administrator also established a website, www.central-settlement.com, containing frequently asked questions, important case documents, and the Administrator's contact information. Ex. B, Cozzi Decl., at ¶ 4; *see also Tripp v. Rabin*, No. 14-cv-2646, 2016 WL 3615572 at *5 (D. Kan. July 6, 2016) ("Considered together, the mailed notice and class counsel's website provides class members with the information that Fed. R. Civ. P. 23(C)(2)(B) requires.") Central also served notice of the settlement upon the relevant state and federal authorities as required by the Class Action Fairness Act of 2005, 28 U.S.C. §1715. Class Counsel has not received any correspondence or objections from state attorneys general or any other noticed authorities.

Thus over 98.8% of the Class Members received direct mail notice. (Cozzi Decl., at ¶ 6). In *Phillips Petroleum*, the Supreme Court concluded that direct notice satisfies due process, and other courts have approved mailed-notice programs that reached smaller percentages of the class. *See Horton v. Leading Edge Mktg. Inc.,* No. 04-CV-00212-PSF-CBS, 2007 WL 2472046, at *5 (D. Colo. Aug. 28, 2007) (approving similar notice regimen); *Tripp*, 2017 WL 86186, at *2 (D.

Kan. Jan. 9, 2017) (granting final approval where direct mail notice reached 80% of class members); *Martin v. United Auto Credit Corp.*, 3:05cv00143 (E.D. Va. Aug. 29, 2006) (Final Order approving class notice with approximately 85% delivery); *Ryals v. HireRight Sols.*, Civ. No. 3:09-CV-625 (E.D Va.) (approving class notice with approximately 84% delivery). In short, the notice plan approved by the Court was executed in accordance with the Court's directives and supports final approval of the Settlement.

## IV.     CONCLUSION

The Parties reached a settlement that provides genuine relief to class members by providing each class member with substantial monetary benefit. The terms of the settlement and circumstances surrounding negotiations, as well as the definite end to a costly and protracted litigation, satisfies the Tenth Circuit's strictures for final approval.

**WHEREFORE**, Banks and the putative class move the Court for an order entering the final approval of this settlement.

Respectfully submitted,

O'TOOLE, McLAUGHLIN, DOOLEY &
PECORA CO., LPA

/s/ Matthew A. Dooley
Matthew A. Dooley     (0081482)

Ronald W. Ady (3694)
Ronald Ady, PLLC

*Counsel for Plaintiff and the Putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2018, a true and accurate copy of the foregoing was filed electronically. Notice of this filing will be sent to counsel of record by regular U.S. mail and/or operation of the Court's electronic filing system.

/s/ Matthew A. Dooley
Matthew A. Dooley

Ronald W. Ady (3694)
Ronald Ady, PLLC
*Counsel for Melvin Banks and the putative class*

11